**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v. CRIMINAL ACTION NO. 2:11-cr-00096

YVETTA RENEE HOLESTINE,

Defendant.

## MEMORANDUM OPINION AND RESTITUTION ORDER

### *I. BACKGROUND*

On February 21, 2012, the Court sentenced Defendant to six months' imprisonment. At the sentencing hearing an issue arose concerning costs incurred by the victim, Hard Rock Exploration, Inc., ("Hard Rock"), during its internal investigation of Defendant's fraud and the participation of nearly half of the company's employees in the prosecution of this case. In her written plea agreement, Defendant agreed that she owed restitution. As determined by the presentence investigation, the amount of restitution directly caused by Defendant's criminal conduct is $115,276.47.[1] At the February 21, 2012, sentencing hearing, however, representatives from Hard Rock indicated that this restitution figure did not include the costs Hard Rock incurred by re-directing the work of several of its employees from daily business matters to ferreting out Defendant's fraud. Hard Rock further stated that the restitution figure did not include costs the

---

[1] Defendant's plea agreement states that Defendant agrees that she owes $183,000. Based on evidence developed in the presentence investigation, that amount is inaccurate.

company incurred in connection with the prosecution of this case, including interacting with law enforcement and attendance at court proceedings.

The Court deferred a ruling on restitution to permit the parties to address these additional costs and permitted the parties to submit additional briefing. The United States filed memoranda (Docket 43, 47) claiming that the costs incurred by the Hard Rock relating to its internal investigation of the offense conduct and its personnel's participation in the prosecution of this case are $12,453.51. The Defendant filed a response (Docket 44) arguing that these costs are excessive and are not the actual losses related to the investigation and prosecution of the case.

On May 14, 2012, the Court held a hearing to resolve this issue. The United States presented the testimony of eight witnesses and an affidavit by William Riske, general counsel and an employee of Hard Rock. (Docket 52-1.) The Riske affidavit contains several exhibits including a spreadsheet detailing the time each employee spent on the investigation and prosecution of Defendant's crimes and the hourly rate of pay for each employee.

*II. APPLICABLE LAW*

Restitution must be ordered, among other things, for property offenses under Title 18 of the United States Code. 18 U.S.C. § 3663A(c)(1)(A)(ii). In a case where the offense resulted in loss of property of the victim of the offense, the restitution order shall require the return of the property to the owner. 18 U.S.C. § 3663A(b)(1)(A). Pursuant to 18 USC § 3663A(b)(4), in any case with identifiable victims, the restitution order shall require the Defendant to "reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense."

A "victim" is a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered. 18 U.S.C. § 3663A(a)(2).

Section 3664(f)(1)(A) provides: "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. 18 U.S.C. § 3664(e). The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. *Id.* The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant. *Id.*

Pursuant to 18 U.S.C. § 3664(f)(2)(A)-(C):

> Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—
>
> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
> (B) projected earnings and other income of the defendant; and
> (C) any financial obligations of the defendant; including obligations to dependents.

Finally, 18 U.S.C. § 3664(f)(3)(A) & (B) provides:

> (A) A restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments.
>
> (B) A restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a

restitution order in the foreseeable future under any reasonable schedule of payments.

*III. DISCUSSION*

The victim in this case, Hard Rock, is an oil and gas production company based in Charleston, West Virginia. Formed in 2003, the company has thrived over the years, expanding its drilling operations from just five wells in 2003 to over 345 wells by 2010. Notwithstanding its growth, Hard Rock is a small business employing just eighteen people. In 2008, Hard Rock hired Defendant as an accounts payable manager. Her duties included receiving incoming mail, generating business checks, and paying company bills. Her position gave her access to business credit cards issued to Hard Rock employees. These business credit cards were issued so that employees could make authorized company purchases when they traveled or worked outside the office. The company did not allow employees to use the cards for personal expenses. As noted in the parties' factual stipulation and the presentence investigation report, Defendant, among other things, fraudulently used business credit card information and thereby received cash, goods, and services totaling $115, 276.47.

At the May 14, 2012, restitution hearing, the Court heard testimony by eight employees of Hard Rock and its subsidiary, Performance Energy Partners. Each of these witnesses estimated the amount of time they spent investigating Defendant's fraud and participating in the prosecution of this case. They then multiplied that number by their normal rate of pay to arrive at an estimate of the company's expense. For example, Monica Francisco, Hard Rock's Executive Vice President, testified that she spent a total of nine and a half hours tracking down Defendant's fraudulent activities. Ms. Francisco noted that this was a "very conservative estimate." Ms. Francisco stated

that her work included reviewing all of Defendant's emails as well as her own, and conferring with Hard Rock's counsel, William Riske; the company's president, Jim Stevens; and employees in the accounting department. She also spent time meeting with the Assistant United States Attorney and the investigative team. Ms. Francisco's hourly rate is $72. Thus, the value of the time Ms. Francisco spent in this endeavor is $684.

Other witnesses testified in a similar fashion, although their hourly rates were lower than Ms. Francisco's, ranging from $60 to as little as $15. Several witnesses said that they testified in the grand jury or attended the plea hearing and/or the original sentencing hearings. The company's president, Jim Stevens, testified that he spent twelve hours participating in the investigation of Defendant's fraud and had "been in and out of this court and other courts for the past three years." Using his hourly rate of $60, the expense estimate for Mr. Steven's time is $720.

The individual who spent the most time investigating Defendant's fraud was Joshua Jones, the son of Aaron Jones, Hard Rock's comptroller. Josh was specifically hired to assist in the investigation of Defendant's fraud. He was tasked with reviewing statements for twenty-four company credit cards going back to 2008, the year Defendant was hired. His job was to flag all suspicious charges and bring them to his father's attention. Josh's $15 hourly rate was the lowest of all the employees who helped unearth Defendant's fraud. In arriving at his estimate of 254 hours, Josh consulted his father's daily journal. His father noted his son's hours in this journal. Aaron Jones testified that he keeps track of everything he does in this journal and that it is a "very accurate" record of his daily activities. Based on Josh's hourly rate and his estimate of his hours, the amount attributed to the time he spent reviewing company credit card statements and consulting with his

father is $3,813.75. Based on Aaron Jones's testimony, the value of his forensic accounting is estimated at $6,625 (132.50 hours times $50 hourly rate).

Hard Rock's lawyer, William Riske, was asked by Jim Stevens to assist in the investigation of Defendant. Mr. Riske is a salaried employee of Hard Rock and earns approximately $45 an hour. Mr. Riske coordinated with the United States Attorney's Office and company personnel and provided documentation and written narratives to law enforcement. He attended staff meetings concerning the crime, worked with various employees to get documents and information, prepared the spreadsheet that was attached to his affidavit, met with law enforcement officers, and attended the sentencing hearing. He kept a notebook of his time. He estimated that he spent a total of five hours attending to these various tasks and was "very confident" about the accuracy of this estimate. All told, the total expense Hard Rock incurred resulting from Mr. Riske's participation in the investigation and prosecution of Defendant's fraud is $225.

As for the remaining three witnesses, each testified in a manner that supported the amounts set forth in Mr. Riske's spreadsheet. One of these witnesses, Carolyn Brown, stated that although she did not keep a log, she was "confident" that her estimate of twelve hours' work spent researching and retrieving records relating to Defendant's fraud was accurate.

The Court carefully observed the demeanor of each of these witnesses as they testified at the restitution hearing. Each witness was forthcoming, knowledgeable, and credible. Most of these witnesses indicated that their time estimates were conservatively calculated. Additionally, the company's employment of Joshua Jones at $15 an hour to review many years of statements for twenty-four different credit cards served to mitigate the cost that onerous task would have run if a higher paid employee (such as Aaron Jones) had undertaken that work. The Court notes as well that,

based on remarks by counsel for the United States made at the sentencing hearing, Hard Rock had no idea at the time it investigated Defendant's fraud that its costs might be reimbursable; thus, the company's incentive would have been to minimize— not inflate—their costs. Finally, the Court notes that the $12, 453.51 estimate does not include the expense the company incurred in having its personnel attend the restitution hearing and testify. That expense, if it had been pursued, would likely have raised the total amount significantly.

The Court has considered the entire record in this case, including the parties' memoranda, the pre-sentence investigation report, and the evidence and argument offered at the May 14, 2012, restitution hearing. Pursuant to the governing legal standards, including 18 U.S.C. §§ 3663A, 3664 and U.S.S.G. §§ 5B1.3 and 5E1.1, the Court makes the following findings:

**FINDING:** The offenses of conviction are fraudulent transactions with an access device in violation of 18 U.S.C. § 1029(a)(5) and identity theft in violation of 18 U.S.C. § 1028(a)(7). These are offenses against property arising under Title 18 and, thus, restitution is mandatory under 18 U.S.C. § 3663A.

**FINDING:** Pursuant to 18 U.S.C. § 3663(a)(2), this case has an identifiable victim, namely: Hard Rock Exploration, Inc. Based on paragraphs 10-37, 99-101 of the presentence report and evidence presented at the May 14, 2012, restitution hearing, the full amount of loss sustained by Hard Rock Exploration as a consequence of Defendant's crimes is $127,729.98. Of this amount, $115,276.47 is the amount of financial loss directly caused by Defendant's criminal conduct and $12,453.51 is the expense the company incurred during its participation and investigation of the offense and the attendance of nearly half of the company's staff at court proceedings related to the offenses.

Pursuant to 18 U.S.C. § 3664, the Court shall specify the manner in which, and the schedule according to which, the restitution is to be paid.

Accordingly, the Court makes the following additional finding:

**FINDING:** Based on paragraphs 66-84 of the presentence report and the representations made by Defendant and her counsel at the restitution hearing concerning

Defendant's loss of employment following sentencing, a monthly restitution payment schedule of $1,000 is appropriate, which shall be a special condition of Defendant's term of supervised release. The monthly installments shall commence within 30 days of Defendant's release from cusody and continue until the obligation is paid in full. Restitution payments should be forwarded to the United States District Clerk's Office, P.O. Box 2546, Charleston, West Virginia 25329 for disbursement to:

Hard Rock Exploration, Inc.
1244 Martins Branch Road
Charleston, WV 25312-5987

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: June 21 , 2012

.

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE